In the Matter of the Application of MOKULEIA RANCH AND LAND COMPANY, LIMITED to register and confirm title to real property situated at Mokuleia, Auku, Kealia and Kaena, Waialua, Oahu, State of Hawaii.

NO. 5897

AUGUST 31, 1978

RICHARDSON, C.J., OGATA, MENOR and KIDWELL, JJ., and CIRCUIT JUDGE LUM in place of KOBAYASHI, J., Disqualified.

OPINION OF THE COURT BY KIDWELL, J.

Upon appellee's application, the Land Court registered title in appellee to land situated at Mokuleia, Oahu, and designated, as the makai (seaward) boundary of the land in question, "highwater mark at seashore (vegetation line)." The State, appellant, claims ownership of the portion of the

land in question which lies makai of an old road which was designated as the makai boundary in royal patent grants made by Kamehameha III in 1850. We vacate the judgment and remand for further proceedings.

Around 1850, Kamehameha III made grants of parcels of land in the seacoast area extending some four miles from the town of Waialua westward toward Kaena Point. Grants 456 and 459 conveyed the land the makai boundary of which is in issue here. Grants 456 and 459 and all of the parcels to the east were described as fronting on a road and as rectangles with boundaries at right angles to the road, parallel with the boundaries of the other grants. In some instances, the grant described a single parcel which reserved the road and included the land lying makai of the road. In other instances, the land lying makai of the road was granted separately from that lying mauka (inland) of the road. In no instance, except Grants 456 and 459, did these grants fail to dispose of the land lying makai of the road. The parcels situated to the west of Grants 456 and 459 were described, in effect, as bounded by the sea with no mention of a road. The location of the road was not defined in any of the grants.

The descriptions of the granted parcels require that the road be visualized as straight. By reference to the lengths of the boundaries running from the road to the sea, the location and direction of the road at its easterly end toward Waialua may be approximately determined. The record contains a reproduction of a government map, purportedly prepared in 1851, which shows the road running straight from a location 83 chains inland from the beach and gradually approaching more closely to the beach as it proceeds westward, until it becomes immediately adjacent to the beach at the boundary of Grant 459 and proceeds across that parcel and Grant 456 with no remnant indicated between the road and the beach.

At the time of the proceedings below, the foregoing data placed the location of the road makai of the vegetation line along the makai frontage of Grant 456 but mauka of the vegetation line along the makai frontage of Grant 459. The

Land Court found that the shoreline in this area has shifted and is shifting continuously.

It is undisputed that the road was excluded from the area conveyed by Grants 456 and 459, and that the Territory of Hawaii was the owner of the road premises in 1937, although the road had long since fallen into disuse with no sign of its location remaining. By exchange deed dated July 28, 1937, appellee conveyed to the Territory certain lands required for road purposes in exchange for what was described as "old Mokuleia Road" running "across" Grants 456 and 459, and across other parcels owned by appellee. The old Mokuleia Road, as described in the exchange deed (the "1937 Description") was delineated on a map prepared by the Territory as running along the makai frontages of Grants 456 and 459 but with a bend, of approximately 13° to the right, as required to conform to the configuration of the beach. No such bend was permitted by the descriptions of Grants 456 and 459 or shown on the 1851 map. The map prepared by the Territory to depict the 1937 Description showed Grants 456 and 459 as bounded by the seashore.

The Land Court found that the 1937 Description was not that of the road referred to in the grants and was based upon a mutual mistake of the parties. At a meeting between representatives of the Territory and appellee, during 1936, the then Commissioner of Public Lands of the Territory had stated that the purpose of the exchange was "to clear up [appellee's] title in all this land around here". The Land Court inferred from this a purpose on the part of the Territory to exchange whatever interest it had in the area and found that the deed was in fact intended to convey to appellee all of the land which the Territory owned in the area. The Land Court also found that the actions of the parties, in the exercise by appellee of continuous and uncontested use of the makai lands and the payment of taxes thereon, confirmed this intent. In its decision, the Land Court purported to reform the exchange deed to include the old road (wherever located) and all of the interest of the Territory in the land between the old road and the vegetation line at the seashore within extensions of the mauka-makai boundaries of Grants 456 and 459.

It is the State's position, in effect, that the rights to the land lying makai of the 1937 Description should be determined on the premise that the old road was there accurately described and that Grants 456 and 459 conveyed no land lying makai of the old road. Appellee presents, in support of the judgment awarding to it title extending to the seashore, an intricate series of contentions which we believe can fairly be paraphrased as follows:

(1) Grants 456 and 459 should be read as though they had designated the seashore as the makai boundary and reserved therefrom the old road. The exchange deed should be read as conveying to appellee the old road, wherever it was located. Since appellee's title was affected only by the reservation of the old road, ownership now runs unimpeded to the sea.

(2) If Grants 456 and 459 left ownership in the King not only of the old road but of all land lying makai of the old road, the exchange deed was properly reformed by the Land Court to convey the makai land as well as the old road.

(3) The State is estopped to deny that the makai boundary of each of Grants 456 and 459 is at the seashore because the 1937 Description refers to the old road as running "across" these parcels and the accompanying map shows the boundaries as the seashore.

Finally, appellee asserts that the land lying makai of the 1937 Description should not all be lost to it, even though it may fail in its claim to the seashore as a boundary. If the exchange deed is reformed to substitute the correct description of the old road for the 1937 Description, appellee would be entitled to all lands mauka of the makai boundary of the old road by virtue of the original grants and the exchange deed. As a last resort, appellee contends that if the old road was in fact located makai of the 1937 Description, as appellee's evidence puts it, appellee is the owner by virtue of the grants of the land lying mauka of the mauka boundary of the old road, without relying on the exchange deed. But the arguments of appellee summarized in this paragraph do not support the judgment which awarded title running to the

seashore. Since the Land Court did not determine the location of the old road, or even whether it was makai or mauka of the 1937 Description, we do not have a record which enables us to consider alternatives to the Land Court's decision. We must confine ourselves to consideration of the propriety of the seashore boundary determined by the Land Court.

Appellee's first argument would support the judgment upon a theory not adopted by the Land Court and upon factual inferences not supported by any finding of the Land Court. It is argued that the circumstances under which these grants were made and the subsequent conduct of the government show a manifest intent that the seashore be the boundary. Appellee would therefore read the grants as though they conveyed the parcels by perimeter descriptions which embraced the old road and then reserved the old road out of the land so conveyed. It is argued that the makai boundary would then in fact have been coterminous with the seashore and should now be read as though the seashore had been designated. But we do not reach the question of the effect which should be given such a perimeter description. Here the Land Court found expressly that Grants 456 and 459 ran only to the mauka boundary of the old road and thus did not reach to the seashore. The factual inferences which appellee suggests are weak and conjectural at best, and provide no reason for us to question this finding.[1] Appellant must establish title to land lying makai of the old road through some instrument other than the grants.

We turn, therefore, to consideration of the exchange deed of 1937, which the Land Court found to be the source of appellee's title to the lands lying makai of the old road,

---

[1] In *In Re Application of Kelley,* 50 Haw. 567, 445 P.2d 538 (1968), an 1885 private deed described the boundary of the granted parcel as commencing at the mauka side of a road and, after courses defined by fixed azimuths and distances, running along the road to the starting point. The fact that the road bordered upon the sea was held insufficient to overcome the inference from the non-inclusion of the road within the described boundaries, supported by other deeds and maps relating to the road, that the grantor did not intend to include the underlying fee title to the road in the parcel conveyed.

wherever it may have been located. The decision of the Land Court is rested upon a reading of the exchange deed, after its reformation, as conveying both these lands and the old road, a conclusion which renders it unnecessary to locate the old road. We have said that "the general rule is that relief through reformation may be had when the written instrument does not, through a mutual mistake of fact, conform to the intention of the parties to the instrument". *State v. Kahua Ranch, Ltd.,* 47 Haw. 28, 33, 384 P.2d 581, 585 (1963). Reformation of the exchange deed was predicated by the Land Court upon its finding that the parties intended that the deed should convey all of the land which the Territory owned in the area. Absent this finding, of course, reformation of the exchange deed cannot be sustained and appellee cannot rely upon the exchange deed to support its claims here. The findings of fact of the Land Court may not be set aside unless clearly erroneous. Rule 52, Hawaii Rules of Civil Procedure. Nevertheless, our examination of the record convinces us that there is no support in the evidence for the proposition that the Territory intended to convey by the exchange deed any land other than the old road and that the finding of the Land Court to that effect should be set aside.

The evidence upon this question is not in dispute. On May 26, 1936 a conference took place between Walter F. Dillingham, representing appellee, and L. M. Whitehouse, Commissioner of Public Lands of the Territory. A memorandum of that conference was prepared and transmitted the next day to Mr. Dillingham. A copy of the memorandum was signed by Mr. Whitehouse and, on behalf of appellee, by its secretary, J. C. Lewis. Each of the signatories acknowledged his signature on August 1, 1936. After reciting that certain lands are to be conveyed to the Territory, the memorandum states:

"In consideration for the parcels of land above mentioned to be conveyed to the Territory, the Territory of Hawaii will quitclaim all of the ancient roadway called Alanui Niu (Coconut Road) lying makai of the right-of-way of the Oahu Railway & Land Company through

Mokuleia and Kawaihapai, extending from about midway in apana 1 of Grant 457 to the west boundary of Grant 240 which is the east boundary of the city and county park, having an approximate width of 50 feet and an approximate length of 5000 feet. This portion of the ancient road lying makai of the railroad right-of-way, has not been in use since prior to the construction of the railroad track and establishment of the right-of-way sometime between 1898 and 1899, and is no longer required for public purposes.''

The proposed exchange of land was submitted to the Board of Public Lands at its meeting on June 25, 1936. A transcript of the proceedings of that meeting contains the following:

"MR. WHITEHOUSE:

"I present for your consideration proposal of exchange with the Mokuleia Ranch & Land Company, involving the acquisition of some 2.44 acres for road purposes, beyond Kawaihapai, Waialua, Oahu, in exchange for which the Territory is to convey a road strip, 33 feet wide, and 4570 feet long, or an area of 3.46 acres. This proposition with the Ranch Company is only to get title straightened up, in order to clear up their cloud in title in all this land around here, has not been used since the railroad was constructed in 1899, still referred to in some of the old deeds, going way back to 1851, clear title to road now running right along this section, want to get cloud of title removed, and they are willing to give us this section for an exchange of a mythical road down there. We are quitclaiming title to something we may not own at all for this 3.46 acres for this right-of-way we are using, get fee and clear title.''

The map prepared by the Territory to accompany the description of the old road, as contained in the exchange deed, as well as appellee's uncontested use of the makai lands and payment of taxes thereon, may support an inference that those representing the Territory in this transaction believed that appellee held title, under the grants, running to the seashore and including the lands makai of the old road. It

also may be inferred that the Territory's representatives were under the impression that appellee expected, by acquisition of the land conveyed by the exchange deed, to clear its title to the lands now in question. But we find no support in the evidence summarized above for a factual inference that the Territory intended to convey its title to lands not described in the exchange deed, other than possibly the lands actually comprising the old road if the description of the old road in the exchange deed was in error.[2] It may be permissible to infer that appellee would have desired to include the makai lands if it had been aware, in 1937, that its title was subject to question. It is quite another matter to infer that the representatives of the State, while willing to exchange the Territory's claim to the old road for the lands acquired from appellee, would have been willing to exchange the Territory's claim to the makai lands as well. The remark of Mr. Whitehouse disclosed only that he was aware of appellee's assumption that the transaction would clear its title and does not support the inference drawn by the Land Court.

We are left with a firm and definite conviction that a mistake was made by the Land Court in its finding that the Territory intended to convey by the exchange deed the lands lying makai of the old road and that the finding should be set aside as clearly erroneous. *Miller v. Leadership Housing Systems, Inc.*, 57 Haw. 321, 555 P.2d 864 (1976). The judgment of the Land Court therefore cannot be sustained upon a reformation of the 1937 exchange deed.

We also find unsupported appellee's contention that the State is estopped by the 1937 Description and its accompany-

---

[2] In its closing statement filed in writing with the Land Court, appellee contended that Grants 456 and 459 were bounded by the sea, or, if the court did not so find, that the makai boundary of appellee's land should be along the makai boundary of the old road as located by appellee's surveyor rather than as located by the 1937 Description, for which purpose the exchange deed should be reformed by substituting for the 1937 Description a correct description of the old road. The record does not show that appellee advanced in the Land Court the contention that the exchange deed should be reformed to include lands lying makai of the old road.

ing map. We assume for the purposes of this opinion that the designation of the strip of land described in the 1937 Description as running "across" Grants 456 and 459, and the depiction of Grants 456 and 459 on the map which accompanied the 1937 Description as bounded by the seashore, constituted representations by the Territory of the extent of appellee's title to the lands now in question. However, appellee has wholly failed to point out any detrimental reliance on its part upon these representations and we have found none in the record. Absent a showing of detrimental reliance, appellee may not invoke equitable estoppel. *Doherty v. The Hartford Ins. Group*, 58 Haw. 570, 574 P.2d 132 (1978).

The State has asserted, but has inadequately supported in its briefs, the contention that appellee is estopped by its joinder in the exchange deed to deny that the 1937 Description correctly locates the old road referred to in Grants 456 and 459. The factual background against which this contention should be considered is not provided by the Land Court's findings which are before us. We refrain from expressing an opinion on this question, which will be for the consideration of the Land Court upon remand.

The judgment is vacated and the case is remanded to the Land Court for further proceedings consistent with this opinion.

*Andrew S. O. Lee,* Deputy Attorney General, for State of Hawaii, appellant.

*David L. Irons (Carlsmith, Carlsmith, Wichman and Case* of counsel) for Mokuleia Ranch and Land Company, Limited, appellee.